UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALEX TERRELL ADAMS,

                        Plaintiff,

v.                                                     Case No. 17-cv-245-dej-pp

RACINE COUNTY JAIL, *et al.*,

                        Defendants.

**DECISION AND ORDER SCREENING THE PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 15), DISMISSING CERTAIN DEFENDANTS, DENYING THE PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER (DKT. NO. 28), DENYING THE PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR SANCTIONS (DKT. NO. 28), DENYING THE PLAINTIFF'S MOTION TO ORDER THE DEFENDANTS TO ALLOW HIM ACCESS TO THE LAW LIBRARY (DKT. NO. 29), AND DENYING WITHOUT PREJUDICE THE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 32)**

This case currently is assigned to Magistrate Judge David E. Jones. Although the plaintiff has consented to Judge Jones hearing and deciding the case, the defendants have not yet had the opportunity to decide whether to consent, because until now, the court has not screened the complaint and decided whether it should be served on the defendants. Because *both* parties have not yet consented to the magistrate judge hearing the case, the district court judge will screen the complaint.

## I. SCREENING OF THE PLAINTIFF'S AMENDED COMPLAINT

A. <u>Standard for Screening Complaints</u>

The Prison Litigation Reform Act ("PLRA") applies to this case because the plaintiff was incarcerated when he filed the complaint. 28 U.S.C. §1915. The PLRA requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. allegations must "raise a right to relief above the speculative level."

Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   Facts Alleged in the Amended Complaint

The plaintiff has sued the following defendants: Captain Wearin, Dr. Butler, Nurse Erin (or Airin), Nurse Sarah Simon, Unknown Intake Sergeant, Intake Holding Officer John Doe, CO John Doe #1, CO John Doe #2, Advanced Correctional Services, Racine County Jail, Racine County Sheriff's Department and Sheriff Schmaling. Dkt. No. 15 at 1.

On April 1, 2016, the plaintiff arrived at the Racine County Jail, and during the medical screening, informed the booking officer that he had seizures. Id. at ¶¶ 16-17.

About a month later, on April 27, 2016, the plaintiff had a seizure while in his cell. Id. at ¶18. "John Doe Correctional Officer" (not a defendant) contacted medical staff, and Nurse Ammon (not a defendant) went to the

3

plaintiff's cell. Id. The plaintiff was "conscious but unresponsive, shaking and diaphonetic pupils constricted and unable to squeeze [Ammon's] hands." Id. Several unidentified correctional officers (also not defendants) told the plaintiff later that correctional officers moved him out of the cell "by his arms and legs while his head hanged backwards as he foamed at the mouth and was unresponsive." Id. at ¶19. He was taken through to intake, through the sally port, onto a stretcher, into an ambulance and to the hospital. Id. at ¶20. At about 2:30 a.m. the next day, the plaintiff was discharged from Wheaton Franciscan Hospital with orders to follow up two days later with neurologist Janel Schneider (not a defendant), and with a prescription for 100mg of Dilanton. Id. at ¶21.

Once the plaintiff got back to the jail that morning, "Nurse Jane Doe" (not a defendant) took his vitals. Id. at ¶22. The plaintiff asked for his seizure medication, but the nurse told him that she could not give him the medication without a doctor's order. Id. She said this even though she had the discharge papers from Dr. Schneider. Id. The plaintiff was placed in intake because of the seizures. Id.

At around noon that day, Nurse Erin and Nurse Sarah Simon were called to intake because the plaintiff was unresponsive. Id. at ¶23. Once the plaintiff "became responsive," he observed Nurse Erin blocking his breathing "by sticking two ammonia tabs up both his nostrils with latex gloved hands covering his mouth and nose, pushing down with tremendous force." Id. This made his ability to breathe "unbearable." Id. "This comes after [the plaintiff]

4

had seizures the whole morning and fought for his life to stay conscious and alive with no strength to call for help or to press the emergency button . . . ." Id. The plaintiff alleges that "Unknown Intake Sergeant," "John Doe Intake Holding Officer," "John Doe CO #1," and "John Doe CO #2" allowed him to "seize" all morning, and that neither Nurse Sarah nor the COs stopped Nurse Erin from blocking the plaintiff's breathing. Id. at ¶24.

The following day, on April 29, 2017, the plaintiff wrote an inmate grievance regarding the incident to the "Jail Sergeant" (not a defendant) and Captain Wearing. Id. at ¶25. Captain Wearing responded on May 6, 2016, "but never stated if anything, on how he was going to handle this situation or if he was going to investigate why [the plaintiff] was not properly checked on." Id. The jail sergeant never responded. Id.

The plaintiff says that he did not get his prescribed Dilantin until defendant Dr. Butler gave it to him two weeks later, id. at ¶26, and he alleges that Dr. Butler "bumped" the medication from the 100 mg prescribed at Wheaton Franciscan to 200 mg, dkt. no. 15-2 at 1. The plaintiff asserts that this caused him mental, physical and emotional anguish. Id.

The plaintiff seeks compensatory and punitive damages and asks the court to order the defendants to do various things. Id. at 4-5.

    C.    <u>Legal Analysis of Alleged Facts</u>

To state a claim for relief under §1983, the plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons

5

acting under the color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)). Liability under §1983 is predicated on a defendant's personal involvement in the constitutional deprivation. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). "An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." Id. (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982). He "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988).

1.  *Racine County Jail and Racine County Sheriff's Department*

The court will not allow the plaintiff to proceed with any claims against the Racine County Jail or the Racine County Sheriff's Department.

The plaintiff cannot sue the jail, or the sheriff's department, under §1983. Section 1983 allows a plaintiff to sue a "person" who, acting under color of law, violates his constitutional rights. The Racine County Jail is not a person, or a legal entity—it is an organization, not an individual subject to suit under §1983. Johnson v. Racine Cty. Jail, No. 15-CV-1291-PP, 2016 WL 482031, at *3 (E.D. Wis. Feb. 5, 2016); see also Powell v. Cook C'nty Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); Nawrocki v. Racine Cty. Jail, No. 08-CV-96-BBC, 2008 WL 4417314, at *1 (W.D. Wis. Mar. 7, 2008) ( "a building is not a proper party to a lawsuit brought under 42 U.S.C. § 1983.")

6

Under Wisconsin law, the sheriff's department is an arm of the County. See Abraham v. Piechowski, 13 F. Supp. 2d 870, 877-879 (E.D. Wis. 1998). This means that the "Sheriff's Department is not a legal entity separable from the county government which it serves…" Whiting v. Marathon County Sherriff's Department, 382 F.3d 700, 704 (7th Cir. 2004). A plaintiff cannot sue a sheriff's department under §1983. The court will dismiss the Racine County Jail and Racine County Sheriff's Department as defendants.

The plaintiff asserts that he named these two entities as defendants because "they are believed upon information and belief to have video footage concerning the dates in this complaint, or they know or should've known." Dkt. No. 15-2 at ¶28. After the remaining defendants have answered the complaint and the court has set deadlines for conducting discovery, the plaintiff may use the discovery process to ask the remaining defendants for copies of any videotaped evidence. The jail and the sheriff's department do not have to be defendants in order for him to obtain this information.

2. *Sheriff Schmaling and Advanced Correctional* Services

The plaintiff lists Sheriff Schmaling and Advanced Correctional Services as defendants. He alleges that Sheriff Schmaling failed to protect him "by not providing him with safety by not properly observing him" and "doing the proper wellness checks." Dkt. No. 15-2 at ¶33. The plaintiff does not allege that Schmaling was present at the jail during the events he described. Section 1983 "does not allow actions against individuals merely for their supervisory role of others . . . ." Palmer v. Marion C'nty, 327 F.3d 588, 594 (7th Cir. 2003) (citing

7

Zimmerman v. Tribble, 226 F.3d 568, 574 (7th Cir. 2000)). In order for a person to be held liable under §1983, the plaintiff must show that that person had "personal involvement in the alleged constitutional deprivation to support a viable claim." Id. (citations omitted). The plaintiff would need to show, at the very least, that "the Sheriff acquiesced in some demonstrable way in the alleged constitutional violation." Id. (citing Kelly v. Mun. Courts of Marion C'nty, 97 F.3d 902, 909 (7th Cir. 1996)). That means he would need to make some showing that Schmaling knew of the facts the plaintiff alleges, and that Schmaling knew that there was some risk of harm to the plaintiff from the other defendants. The plaintiff has not made that showing, and the court will dismiss Schmaling as a defendant.

The plaintiff alleges that Advanced Correctional Services "ill-train[ed]" its employees "in rescue training which hindered [the plaintiff's] breathing and could've killed him," and "for having their doctors intentionally go against the orders of trained professionals in their field once prescribed." Dkt. No. 15-2 at ¶35. "[A] corporate entity violates an inmate's constitutional rights 'if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights or prisoners.'" Woodward v. Corr. Med. Serv's of Ill., Inc., 368 F.3d 917, 927 (7th Cir. 2004) (quoting Estate of Novack *ex rel.* C'nty of Wood, 226 F.3d 525, 530 (7th Cir. 2000)). A plaintiff must show that the entity either had an "express policy" of depriving people of their rights, or a "wide-spread practice" that is "so permanent and well-settled as to constitute a 'custom or usage' with the force of law . . . ." Calhoun v. Ramsey,

8

408 F.3d 375, 379 (7th Cir. 2005) (quoting McTigue v. City of Chi., 60 F.3d 381, 382 (7th Cir. 1995)). In either case, the plaintiff must show "evidence that there is a true . . . policy at issue, not a random event." Id. at 380. A single incident does not establish liability. Id.

The plaintiff has not alleged sufficient facts to indicate that Advanced Correctional Services had either an express policy of failing to train staff or having their doctors go against the orders of other doctors. Nor has he alleged sufficient facts to show that Advanced Correctional had a wide-spread policy of doing these things. The court will dismiss Advanced Correctional as a defendant.

        3.    *Nurse Erin, Nurse Simon, the Unnamed Defendants and Dr. Butler*

The Eighth Amendment protects an inmate's right to humane conditions of confinement, including adequate food, clothing, shelter and medical care. Farmer v. Brennan, 511 U.S. 825, 825-26 (1994). A prison official may be liable if he or she acts with "deliberate indifference" to a substantial risk of serious harm to inmate health or safety. Id. at 834. A prison official is deliberately indifferent when he or she knows of a substantial risk of serious harm and either acts or fails to act in disregard of that risk. Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). Harm is sufficiently "serious" if the inmate's condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." Id.

The plaintiff alleges "Unknown Intake Sergeant," "John Doe Intake Holding Officer," "John Doe CO #1," and "John Doe CO #2" allowed him to

9

"seize" all morning without doing anything. He alleges that Nurse Erin blocked his breathing, and that neither Nurse Sarah nor the COs stopped her from doing so. He alleges that Dr. Butler waited two weeks to give him the medication Dr. Schneider had prescribed, and changed the dosage from the 100 mg. Dr. Schneider had prescribed to 200 mg. He says that this caused him mental and physical anguish.

The court concludes that the plaintiff's seizure condition was a serious medical condition. The plaintiff's allegations that the unknown officers and John Doe officers stood around and watched him seize for an entire morning without doing anything alleges sufficient facts to allow him to proceed on a deliberate indifference claim against them. His allegation that Nurse Erin blocked his breathing during this series of events is also sufficient to allow him to proceed against her, and his allegation that Nurse Simon watched this and did nothing is also sufficient. Finally, his allegation that Dr. Butler deliberately waited two weeks to give him prescribed seizure medication, and then changed the dosage, is sufficient at this early stage to allow him to proceed on a deliberate indifference claim against the doctor.

        4.    *Captain Wearing*

The plaintiff states that he wrote an inmate grievance to Captain Wearing regarding the Nurse Erin incident. He says that although Captain Wearing responded to the grievance, Wearing "never stated . . . how he was going to handle [the] situation." Dkt. No. 15 at ¶25. As with Schmaling, the plaintiff does not allege that Wearing was personally involved with the Nurse Erin

10

incident. It appears that Wearing may not have known about the incident until after the fact, when he received the plaintiff's grievance. The plaintiff does not have a constitutional right for a prison supervisor to tell him, after the constitutional violation has occurred, what the supervisor plans to do about the incident. The plaintiff fails to state a claim against Captain Wearing, and the court will dismiss Captain Wearing as a defendant.

## II. THE PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PERMAMENT INJUNCTION

The plaintiff asks for a temporary restraining order and permanent injunction against the defendants. Dkt. No. 27. The plaintiff alleges that since he filed his lawsuit, the defendants have become "more adverse" toward him. Id. at ¶1. He says that Lt. Friend (who is not a defendant in the case) has threatened that if the plaintiff doesn't drop the lawsuit, the plaintiff will regret it. Id. at ¶2. The plaintiff says the mailroom clerk has been opening his mail outside his presence and that sometimes he doesn't get the mail for weeks on end. Id. at ¶3. He alleges that Wearing and Lt. Friend have "placed a verbal no-contact" between him and his jailhouse lawyer. Id. at ¶4. He claims that the defendants are permanently housing him in intake to keep him away from his lawyer, that they are playing with his legal mail, and that he fears for his safety because of these things. Id. at ¶5. He asks the court to order the defendants to "desist from any form of violence or threatening behavior," that they send him back to a regular pod, that they stop opening his mail outside his presence, that they allow him access to his jailhouse lawyer, and that they put him in the same pod with his jailhouse lawyer. Id. at 2-3.

11

The court first notes that Lieutenant Friend is not a defendant in this case. The court cannot issue an injunction against someone who isn't a party to the case.

Second, a preliminary injunction is only appropriate if it seeks relief of the same character sought in the underlying suit and deals with a matter presented in that underlying suit. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir.1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."). See also, Alston v. City of Madison, 2014 U.S. Dist. LEXIS 106317, 2 (W.D. Wis. Aug. 4, 2014) ("[T]he general rule is that a plaintiff may not obtain injunctive relief on issues that do not relate to the claims asserted in the complaint."). This lawsuit involves claims of deliberate indifference to the plaintiff's medical condition (seizures). It does not involve claims of access to the courts, access to mail or retaliation. The court will deny the plaintiff's motion for injunctive relief.

### III. THE PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR SANCTIONS

The plaintiff claims that in April 2017, the court ordered the defendants to turn over information to him. Dkt. No. 28. He asks the court to compel the defendants to provide him with "all or any incident reports, medical reports, and video footage" involving the facts in this complaint, and to sanction them for failing to comply with the April 2017 order to turn over these documents. Id.

12

On April 21, 2017, Judge Jones issued an order ruling on several of the plaintiff's motions, dkt. no. 13—the only order issued in April 2017. Nowhere in that order did Judge Jones order the defendants to provide the plaintiff with any documents—the defendants had not even received the complaint at that point, and still haven't. So there is no reason for the court to sanction the defendants for failing to comply with an order the court never issued.

For the same reason, the plaintiff's motion is premature. At the end of this order, the court will order the amended complaint to be served on the remaining defendants. The court will order the defendants to respond to the amended complaint. If and when the defendants file an answer, the court will issue a scheduling order setting deadlines for the parties to exchange discovery. Until then, the defendants have no obligation to provide the plaintiff with anything. The court will deny the plaintiff's motion to compel and for motion for sanctions.

IV. **THE PLAINTIFF'S MOTION TO ORDER DEFENDANTS TO ALLOW THE PLAINTIFF ACCESS TO THE LAW LIBRARY.**

The plaintiff asks for an order directing the defendants to allow him access to the law library two days a week. Dkt. No. 29. He says that he was told by the classification CO that he could not have access to the library because he was on disciplinary segregation. Id. He also asks the court to order the defendants to allow him access to his jailhouse lawyer when he goes to the library. Id.

"The Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials of necessity must regulate the time, manner, and

13

place in which library facilities are used . . . ." Campbell v. Miller, 787 F.2d 217, 227 (7th Cir. 1986) (quoting Lindquist v. Idaho State Bd. of Corr., 776 F.2d 851, 858 (9th Cir. 1985)). This court will not interfere with the prison's decisions or policies regarding whether and when a person in segregation may visit the law library or consult with his jailhouse lawyer. The court will deny the plaintiff's motion.

The court notes, however, that once the defendants have answered the complaint and the parties have exchanged discovery, it likely will be necessary for the plaintiff to do some research. The court expects that the defendants' attorney will remind the institution staff that inmates have a First Amendment right to access the courts.

## V. THE PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

Finally, the plaintiff has filed a motion asking the court to appoint counsel to represent him. Dkt. No. 32. He says that he is indigent and can't hire his own lawyer. Id. at 1. He indicates that his case is complex because it has numerous claims in it. Id. He says he has limited knowledge of the law, and has been receiving help from a jailhouse lawyer. Id. He says that he has asked for a jury trial and has no trial experience, that his case will require expert testimony, that he has a reading level below seventh grade, and that his seizures have caused him memory lapses and headaches. Id. at 2. Finally, he identifies four law offices which he has contacted in an attempt to hire counsel on his own, and says that the only one that has responded has declined to represent him. Id.

14

In a civil case, the court has discretion to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013). The court does not have money to hire lawyers for civil plaintiffs. Because there are not enough volunteer lawyers to represent every civil party who asks for one, the court must carefully consider each request to determine when to appoint counsel. In order for a court to consider appointing counsel to represent a civil party, the party must first make reasonable efforts to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). In this district, a party can satisfy this requirement by providing the court with: (1) the attorneys' names, (2) the addresses, (3) the date and way the plaintiff attempted to contact them, and (4) the attorneys' responses.

Once the party demonstrates that he has made reasonable attempts to hire counsel on his own, the court must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks not only at the party's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The court concludes that the plaintiff has satisfied the first <u>Pruitt</u> factor, in trying to hire counsel on his own. The court will not, however, grant his motion to appoint counsel at this time. The plaintiff has shown, through his many filings, that at this point, he is capable of explaining what happened to him, and why he believes that his rights were violated. He knows how to ask for documents and evidence. The court understands his arguments. At this stage, the court believes that the plaintiff is capable of adequately representing himself. If, at a later stage in the case, the need for legal expertise makes it impossible for the plaintiff to represent himself, he can renew his motion.

## VI. CONCLUSION

The court **ORDERS** that the plaintiff may proceed with an Eighth Amendment deliberate indifference claim against Nurse Erin, Nurse Sarah Simon, Unknown Intake Sergeant, John Doe Intake Holding Officer, John Doe CO #1, John Doe CO #2 and Dr. Butler.

The court **DISMISSES** Captain Wearing, Racine County Jail, Racine County Sheriff's Department, Sheriff Schmaling and Advanced Correctional Services as defendants.

The court **ORDERS** that the plaintiff's motion for a temporary restraining order and permanent injunction is **DENIED**. Dkt. No. 27.

The court **ORDERS** that the plaintiff's motion to compel and motion for sanctions is **DENIED**. Dkt. No. 28.

The court **ORDERS** that the plaintiff's motion to order defendants to allow plaintiff access to law library is **DENIED**. Dkt. No. 29.

The court **ORDERS** that the plaintiff's motion for appointment of counsel is **DENIED WITHOUT PREJUDICE**. Dkt. No. 32.

The court **ORDERS** the United States Marshal to serve a copy of the complaint and this order on Nurse Erin, Nurse Sarah Simon and Dr. Butler under Federal Rule of Civil Procedure 4. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

The court **ORDERS** Nurse Erin, Nurse Sarah Simon and Dr. Butler to file a responsive pleading to the complaint.

The court **ORDERS** the clerk's office to return this case to Judge Jones for further proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions. After the court enters the scheduling order, the plaintiff may serve discovery requests (written questions or requests for documents) on the named defendants in an effort to identify the real names of the Unknown and Doe defendants. Once he knows the real names of the these defendants, the plaintiff should file a motion asking the court to substitute the real names

for the Doe placeholders. Again, however, the plaintiff should not serve any discovery requests upon the named defendants until *after* the court enters a scheduling order.

The court **ORDERS** the plaintiff to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case. Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should retain a personal copy of each document he files with the court.

The court advises the plaintiff that failing to file documents or take other actions by the deadlines the court sets may result in the court dismissing his case for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information

not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 5th day of March, 2018.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**